UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CYNTHIA MANSFIELD,**<br>Defendant | Crim. No. 13-CR-40028-TSH |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States moves the Court to sentence Ms. Mansfield to 11 months of incarceration, 36 months of supervised release to follow, restitution of $993,158.43 to the Internal Revenue Service and the United States Treasury, forfeiture to the extent charged in the information or agreed to in the plea agreement, and a $100 mandatory special assessment.

**I.   FACTS**

The most fruitful way to discuss Ms. Mansfield is by comparing her to Danielle Pazi, Gregory Guertin, and Mildred Martinez, the defendants in related cases.

All four defendants worked at Citizens Bank. Ms. Mansfield was the highest-placed employee: a bank branch manager. She had one source of checks in common with the others and an additional source who supplied only herself. Ms. Mansfield did not interact with the three related defendants in the context of the scheme and, like Mr. Guertin and Ms. Martinez but unlike Ms. Pazi, she did not recruit any co-conspirators.

Ms. Mansfield participated in the scheme for almost as long as Ms. Pazi (12 months vs. 14 months) and generated losses almost as large (138 checks worth $993,158.43 vs. 162 checks worth over $1.1 million).

## II.     SENTENCING GUIDELINE CALCULATIONS

Although the United States understands from the related defendants' cases that the Court will reject the argument, the United States agrees with Ms. Mansfield against imposing the upward adjustment for trafficking in unauthorized access devices under U.S.S.G. § 2B1.1(b)(11). Ms. Mansfield did not use the identity information to file the fraudulent tax returns or otherwise handle the identity information herself.  She only deposited or cashed the checks.

The United States disagrees with Ms. Mansfield's argument that U.S.S.G. § 2B1.1's dependence on the loss's magnitude makes the guideline a poor proxy for moral culpability.  In this type of case, moral culpability *should* depend on the loss.  Here, the $993,158.43 loss results from a crime repeated 138 times over a 12-month period.  Such a crime is more morally culpable than one committed fewer times, over a shorter period, and for less money.  *A fortiori* for a bank branch manager.  The fact that Ms. Mansfield pocketed less than 10% of the proceeds does not suggest lower culpability for this large loss.  Ms. Mansfield was by no means a marginal player: without a bank insider like herself, the conspiracy could never have succeeded.

Although Ms. Mansfield's personal circumstances, as discussed in her sentencing memorandum, may make her less morally culpable than her guideline calculations suggest, the guideline calculations' dependence on loss for this type of crime is otherwise spot on.

The United States will move for a 40% downward departure (versus 10% for Ms. Martinez, 30% for Mr. Guertin, and 45% for Ms. Pazi) for reasons to be explained at the sentencing hearing.  The United States will also move for an additional downward variance to bring the magnitude of her sentence in line with the others.

## III.    SENTENCING RECOMMENDATION

As stated above, the United States recommends sentencing Ms. Mansfield to 11 months

of imprisonment, 36 months of supervised release to follow, restitution of $993,158.43 to the Internal Revenue Service and the United States Treasury, forfeiture to the extent charged in the information or agreed to in the plea agreement, and a $100 mandatory special assessment. A significant sentence of imprisonment is appropriate here for the same reasons outlined in the related cases: this was a very significant fraud; Ms. Mansfield participated in it numerous times for a long time; a significant portion of the profits went into her pockets; she committed the crime by taking advantage of her position of trust as a bank branch manager; and imprisonment is appropriate for purposes of deterring the general public, reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment.

Eleven months of imprisonment is in either Zone B or Zone C. U.S.S.G. § 5C1.1(c) and (d) give the Court options on how to impose that sentence. If the Court imposes time in prison, it should also impose 36 months of supervised release to ensure for the longest period possible that Ms. Mansfield receives the supervision that will help her follow the law. (Although 36 months of supervised release is more than the related defendants received, Ms. Mansfield needs more supervision.) If the Court imposes an alternative to prison, then for the same reason it should impose the longest period of probation possible, and for a portion of that time some sort of residential program would likely be appropriate.

            Respectfully submitted,

            CARMEN M. ORTIZ
            United States Attorney

            */s/ Scott L. Garland*
            Scott L. Garland
            Assistant United States Attorney

**CERTIFICATE OF SERVICE**

      I hereby certify that this document is being filed through the ECF system and therefore will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                        */s/ Scott L. Garland*
                                        Scott L. Garland
                                        Assistant United States Attorney

Date: February 10, 2015